# KIRKSEY, Administrator, *vs.* MEANS.

[BILL IN EQUITY—EQUITABLE LIEN.]

1. *Chancery court; jurisdiction of, in enforcing equitable liens.*—R. being indebted to M. by two promissory notes, secured by deed of trust on certain lands, in consideration of M.'s forbearance in foreclosing, made a contract with M., by which R. was to cultivate the land in cotton for one year, and to give M. one-half of the cotton raised on the land, the same to be credited on the notes, giving a lien on the whole crop for the payment of the one-half; R. died during the year, and his estate declared insolvent,—*held,* that M. obtained an equitable lien on the cotton, which he could enforce in a court of equity, and that as between M. and the creditors of R., the former had the superior lien.

2. *Appellate court; when will not disturb decree.*—Where a decree of the court below is as favorable to the appellant as he was entitled under the law, the appellate court will not disturb the result.

3. *Chancery court; special and general prayer of a bill.*—Although the special prayer of a bill is for a specific performance of a contract, yet under the general prayer, a lien, created by the contract, may be declared and enforced.

APPEAL from the Chancery Court of Greene.
Heard before Hon. J. Q. LOOMIS.

THE bill in this case was filed on the 19th December, 1866, by David J. Means, against Foster M. Kirksey, as the administrator of B. H. Ridgeway, deceased, and sought a specific performance of a contract in regard to personal property and to enforce a lien. According to the allegations of the bill, the defendant's intestate, B. H. Ridgeway, being indebted to the complainant in the sum of $32,000, by two promissory notes, falling due 1st February, 1862 and 1863 respectively, on the 19th day of December, 1859, executed to H. J. Means a deed conveying to him, in trust, to secure the payment of said notes, thirteen hundred and eighty-four acres of land, conditioned, that if said notes were paid at maturity, the deed to be void; but if default should be made, then said trustee was to enter into the possession, advertise and sell the land, and apply the pro-

ceeds to the satisfaction of the notes. The deed was duly executed, acknowledged, and recorded. The notes were not paid at maturity, or the land sold, under the deed, and on the 31st day of January, 1866, B. H. Ridgeway and David J. Means entered into another agreement in relation to the said notes and lands. This second agreement was in writing and under seal, and recites the previous indebtedness, the execution of the deed of trust to secure its payment, and that default had been made, and that the deed of trust still remained unenforced. It is then agreed that without in any way impairing the force and effect of the deed of December 19th, 1859, its foreclosure should not be enforced during the year 1866, and that in consideration of this postponement, said B. H. Ridgeway was to plant the lands, embodied in the deed, in cotton, that year, and to pick, pack and deliver in bales, at Stevens' Bluff, one-half of the cotton so raised, by the 1st day of January, 1867, to be there weighed and the value fixed, and the amount credited on the notes of Ridgeway, due complainant; and it is further agreed, that this deed was to be a lien upon the whole of said cotton crop, until the half thereof is so delivered. Ridgeway planted the land in cotton, and was proceeding to carry out said contract, when, on the 14th day of November, 1866, he departed this life intestate. F. M. Kirksey, the appellant in this court, and defendant below, was, by the probate court of Greene county, appointed administrator of the estate of B. H. Ridgeway, and proceeded to gather the property and make the inventories and appraisement of the estate. Seventy-nine bales of cotton were raised on the land embraced in the deed of trust, forty of which had been picked, packed, and delivered at the river. Kirksey, the administrator, took possession of the cotton, and refused to perform the contract of the 31st of January, 1866, and on the 6th day of December, 1866, advertised that he would rent the plantation of said Ridgeway for the year 1867. The bill prays on an injunction restraining the defendant from removing the cotton from the landing and from renting the land embraced in the deed of trust; prays a specific performance of the contract, or agreement of

the 31st of January, 1866, and offers to specifically perform the same on the part of complainant, and prays for general relief, and avers the insolvency of defendant's intestate. The defendant denies that it was his intention to rent the land embraced in the deed of trust, or that in reference to said cotton, it was his intention to do any other than that which devolved upon him by law, as the administrator of Ridgeway, and admits the insolvency of his intestate. The forty bales of cotton at the landing were placed in the hands of a receiver, appointed by the court, and by him transported to Mobile, and there sold and the sale duly reported to the court and confirmed. On the hearing of the cause on the pleadings, admission of parties and proofs, the chancellor decreed a specific performance of the contract of 31st January, 1866, and referred it to the master to ascertain the amount of cotton raised by the said B. H. Ridgeway upon said lands, during the year 1866, and what has become of the same. The register made his report, by which it appeared that there had been raised on the said lands, during said year, seventy-five bales of cotton. This report was confirmed, and a decree entered in favor of the complainant for the proceeds of the forty bales of cotton sold by the receiver, less commissions, charges, &c. From this decree the defendant appealed, and assigns the same as error.

MORGAN & JOLLY, for appellant.—1. The contract is no sale—simply an agreement for a future sale of a chattel not *in esse*—and no title passed by the contract.—*Screws v. Roach,* 22 Ala. 676.

2. Unless the title to the thing, legal or equitable, passed by the contract to the complainant, equity will not enforce specific performance, especially against the legal title.—18 Ala. 510–11.

3. "This deed is hereby declared a lien on the whole cotton crop until the half is delivered," creates no lien and passes no title, there being no sale, and the thing to be sold not yet being *in esse.* The lien is not to *secure a debt,* but the delivery of chattels or cotton, and the declaration of a lien creates no lien.—5 Vermont, 99; 16 Conn. 287;

21 Maine, 96–7 ; 2 Hilliard on Mortgages ; 3 Leading Cases in Equity, 351 ; 36 Ala. 681 ; 18 Ala. 510–11.

4. The legal title to the property is in Kirksey, as the administrator, and the estate is insolvent, and there are other and large creditors besides Means, and, under the circumstances, the administrator is trustee for the creditors, (19 Ala. 668,) and the statute gives the creditors a lien on all the property of Ridgeway from his death, (Code of Ala. § 1737 ; 16 Barb. Sup. Ct. Reps. 194 ; 3 Por 34,) and his lien is specific and not general.—3 Por. 33–4.

J. B. CLARK, *contra.*—1. The appellant relies upon the case of *Maulden, Montague & Co. v. Armstead's Executor,* 18 Ala. 500–510, to show that a court of equity will not decree a specific performance of a contract in regard to personal property; but this case decides no such thing, and we may well admit, that a court of equity will not generally enforce a contract for the sale of goods or chattels, or indeed that it never will, when compensation in damages for a breach of the contract would furnish a complete remedy ; but this rule is not founded on the ground that there is any distinction between contracts in regard to real and personal property, but because, in regard to the latter, general damages would afford complete redress.—*Savery v. Spence,* 13 Ala. 561 ; 2 Story's Eq. § 717 ; 1 L. C. in Eq. 577, 579, 584, Ed. 1852 ; Willard's Eq. 275 ; *Adderly v. Dixon,* 1 Simmons & Stewart, 607 ; 1 Cond. Eng. Ch. 311.

2. It is said that on the death of Ridgeway, his general creditors acquired an equity, to be paid out of his assets. This may be admitted, but they are bound by particular equities.—1 Powell on Mortgages 192, *a.* Means' equity is special. His is under a special contract, which he has performed. The general creditors trusted Ridgeway on his general credit ; not so with Means.

3. It is said Means, under the agreement, had no lien, and that Ridgeway could give none on a crop to be planted. The authorities relied on by the defendant's counsel, with the single exception of the case in 18 Ala. 510, were actions at law, and cases between the mortgagee, and attaching or execution creditors. We have never contended tha.

this lien was good at law, but always that it was in equity, and the cases cited in the case of *Robinson & Caldwell v. Maulden, Montague & Co.*, 11 Ala. 980, sufficiently show that we are right.

BYRD, J.—1. Under the contract of 31st January, 1866, and the deed of trust of the 19th December, 1859, the appellee obtained an equitable lien on the cotton made on the lands (conveyed in the latter) in the year 1866, which he could enforce in a court of equity against the appellant.—*Maulden, Montague & Co. v. Armstead, Executor*, 14 Ala. 607 ; *Same v. Same*, 18 *ib.* 509.

11. We prefer to place the equity of the bill upon the power and jurisdiction of courts of equity to enforce equitable liens and mortgages, rather than upon its jurisdiction to decree the specific performance of contracts. The result attained by the chancellor is maintainable upon the former doctrine, and it is unnecessary for us to decide whether a court of equity would decree a specific performance of a contract as to personal property upon the pleadings and proofs in this case.

The decree having been as favorable in its results to appellant as he was entitled under the law, there is no error of which he can legally complain as the ground for a reversal.

3. The special prayer of the bill is for a specific performance of the contract of 1866, but under the general prayer it was competent for the court to declare and enforce the lien created by the contract, and although the chancellor decreed a specific performance, yet at the time the decree was made the cotton was not in a condition in which a specific performance of the *terms* of the contract could have been enforced ; but it was competent for the court to enforce the lien given by the contract, and apply the proceeds of the sales of cotton to the debt, which was done, and we will not disturb the result of the decree.

4. As between appellee and the other creditors of Ridgeway, we conceive that the former had the superior lien— *qui prior est in tempore, potior est in jure.*

These views dispose of all the questions raised on the brief of counsel for appellant.

Let the decree of the chancellor be affirmed.