# Booker *et al. v.* Jones's Admr'x.

*Trover for Conversion of Cotton, with . Counts in Case.*

1. *Conveyance of crop growing, or to be grown in future, as between mortgagor and mortgagee.*—A growing crop, however immature its state, was the subject of sale or mortgage at common law; and although a mortgage of future crops, to be grown on rented lands, of which the mortgagor has not yet acquired possession under his lease, may at law be invalid, as a conveyance of things not in existence, unless ratified.by some act on the part of the mortgagor after their acquisition; yet the court inclines to the opinion that, in equity, it would attach to the crops as they came into existence, and transfer the beneficial interest therein as against all the world, except a *bona fide* purchaser without notice.

2. *Same, as between lessor and lessee; lease and mortgage, contemporaneously executed, construed as one instrument.*—Where lands are leased for a term of years, to commence at a future day, and the lessee at the same time executes a mortgage to the lessor, conveying the crops to be grown each year as security for the rent, the lease and mortgage are to be construed together as parts of one and the same instrument; and thus construed, they operate as a reservation of the title to the crops, to the lessor and mortgagee, until the rent is paid.

3. *When trover lies, as between lessor and lessee, mortgagor and mortgagee, and against factor.*—To support an action of trover, the right of property, general or special, and possession, or an immediate right of possession, must concur in the plaintiff at the time of the conversion; and to constitute a conversion, there must be a wrongful taking, or a wrongful detention, or an illegal assumption of ownership, or an illegal user, or misuser. Therefore, where lands are leased for a term of years, and a mortgage is contemporaneously taken of the crops to be grown each year, as security for the rent; but the mortgage contains a stipulation, that the lessee and mortgagor shall, on or before the 31st day of December in each year, ship the crops for sale to some factor of his own selection in Mobile, and that the rent shall be paid out of the proceeds of sale; if the lessee does not ship the cotton by the specified day, the lessor's title would draw to it the possession, and he might maintain trover for any subsequent shipment and sale; but, if the crops are shipped by the lessee before the specified day, and are sold by the factor without notice of the lessor's claim, the lessor cannot maintain trover against either the lessee or the factor.

4. *Factor's liability to third person for money had and received, and lien for advances to his principal.*—If a factor receives cotton for sale, from a lessee who has the lawful possession and a right to ship it, and is notified of the lessor's paramount right to be paid his rent out of the proceeds of sale, at any time be-

fore he has actually paid over the money to the lessee, he becomes liable to the lessor in an action for money had and received; and although he may retain the ordinary commissions for making sales, and charges actually paid on account of the transportation and sale, he cannot assert, as against the lessor, a factor's lien for advances made in good faith to the lessee before notice of the lessor's title.

APPEAL from the Circuit Court of Hale.

Tried before the Hon. M. J. SAFFOLD.

This action was brought by Mrs. Margaret K. Jones, suing as the administratrix of her deceased husband, William A. Jones, against Edmund B. Booker, William N. Knight, Daniel T. Webster, Henry F. Wilson, and Henry H. Happel; and was commenced on the 3d March, 1868. The case was before this court at its January term, 1872, when the judgment of the court below was reversed, and the cause remanded.—See the report of the case, 48 Ala. 109-13. The material facts, as disclosed by the record, were thus stated by the Chief Justice.

"BRICKELL, C. J.—The appellee sued in trover for the conversion of one hundred and nine bales of cotton. Counts in case are joined, the first of which avers that, on the 25th October, 1866, the plaintiff's intestate leased to Henry H. and Thomas J. Happel, for a term of three years, commencing on the 1st day of January, 1867, a plantation in Hale county known as the 'Stephens' place,' at an annual rent of five thousand dollars, payable on the 31st day of December of each year; that for this rent the lessees made their three promissory notes, payable to the intestate, on the 31st day of December of each year, and executed a mortgage to secure their payment, whereby they conveyed to the intestate 'all the crops of cotton grown, or to be grown, on said place during the continuance of the term,' and all the mules, implements, and every other species of property on the place, owned by them; the mortgage expressing the condition and trust, that on or before the 31st day of December of each year of the term, the lessees should ship the cotton to a factor of their own selection in the city of Mobile, who should sell the same, and, from the proceeds of sale, pay the lessor the rent of the current year, and on such payment the mortgage should become void; that the said lessees being bound to ship the cotton grown on the premises, the rent being unpaid, under pretense of performing the duty, but intending to deceive and defraud the appellee, with the assistance of the appellants, Booker & Knight, shipped the cotton grown on the leased premises in the year 1867, to the appellants Webster & Wilson, factors in the city of Mobile, who received and sold the same for fifty-five hundred dollars,

and thereby became liable to pay the appellee the rent of the year 1867, but, instigated by the appellants Happel and Booker and Knight, and contriving with them to injure and defraud the appellee, failed and refused to pay the said rent, though often requested so to do. The second count avers the making of the lease, promissory notes for the rent, and the execution of the mortgage, as in the first. It then avers a shipment of the cotton by Happel, Brooks & Knight, to Webster & Wilson, who knew the rights of the appellee, but, intending to defraud her, sold and removed the cotton, or caused it to be sold and removed beyond her reach and control; and that they were advised and instructed so to do, by their co-defendants, Happel, Booker & Knight, and have failed and refused to pay the appellee the rent of 1867.

"The cause was tried on the plea of not guilty. Special pleas were interposed severally by the defendants, to which demurrers were sustained. The special plea interposed by Happel, and by Webster and Wilson, was substantially the same, averring the invalidity of the mortgage, because at its execution the cotton had no existence, actual or potential. A special plea interposed by Happel, and by Booker and Knight, is, in form, a plea of set-off, and avers, in substance, that the appellee, under the mortgage, took possession of personal property, other than the cotton conveyed by it, of greater value than the rent due her, for which she has failed to account,

"The evidence on the trial was the lease, the promissory notes for the annual rent, and the mortgage to secure their payment, all of the same date. The words of conveyance of the mortgage are, 'do bargain, sell, and convey unto the party of the second part' (the lessor) 'all the crops of cotton grown or to be grown on the said tract of land, known as the Stephens place,' etc. The condition of the mortgage, so far as now material, is thus expressed : 'But this indenture is made upon the following trusts and conditions—that is to say, that if, on or before the 31st day of December of each year, during the continuance of said lease, the said parties of the first part' (the lessees) 'shall ship all the cotton which may be grown on said plantation that year, and gathered, to such factor or factors in Mobile as they may select, who shall sell the same, and, out of the proceeds of such sale, pay to the said William A. Jones, or his order, such sum or sums of money as may be then due and unpaid on said promissory notes, or either or any of them, and the residue to the parties; and so on, in each year during the continuance of said lease,' etc. The mortgage was not filed for registration until the 24th of May, 1867. The lessor died, and on the 13th of

April, 1867, the plaintiff obtained administration on his estate. The lessees entered into possession of the premises, cultivated them during the year 1867, raised thereon a crop of cotton, one hundred and nine bales of which they shipped to Webster & Wilson, cotton factors in the city of Mobile, in different lots, and at different times prior to the 31st of December, 1867. Webster & Wilson made sales of the cotton as it was received, the last sale being on the 27th of December, 1867. They received and sold the cotton, as they supposed, as the property of H. H. Happel & Co., a firm composed of H. H. Happel and Booker & Knight. Whether Booker & Knight were partners with Happel in the growing of the cotton, or whether they had merely aided him in the cultivation, expecting to be paid from its sales, and to be allowed a share of its profits, is a fact about which the evidence conflicts. To the firm of H. H. Happell & Co., Webster & Wilson made, during the year 1867, advances in money and supplies, not having any actual notice of the mortgage, or of appellee's claim, prior to 27th December, 1867. These advances amounted to $3,871 34. The net proceeds of the sale of the cotton was $5,545 66. Deducting the advances, there remained of the proceeds of sales $1,674 32. Webster & Wilson, after receiving notice of the claim of the plaintiff, claimed to retain their advances, and refused to pay over more than the balance of the proceeds of sales after deducting such advances. This balance was also claimed by Happel, and by Booker & Knight. Booker & Knight had promised the plaintiff that her rent should be paid.

" The court charged the jury, that if they believed the evidence, they must find for the plaintiff, against Happel, and Webster & Wilson; also, if they believed that Booker & Knight were jointly interested with Happel in the cultivation of the 'Stephens place' in the year 1867, and united and co-operated with them in the shipment and sale of the cotton by Webster & Wilson, as shown by the evidence, and approved and ratified said sale, after they were informed of the same, and claimed all or part of the proceeds in exclusion of the plaintiff's right, they must also find a verdict against said Booker & Knight, as well as against said Happel, Webster & Wilson. An exception was taken to these charges; and they, with the rulings on the demurrers to the special pleas, and various rulings on the admissibility of evidence, not material in the view taken of the case, are now assigned as error."

A. B. PITTMAN, with COLEMAN & SEAY, for the appellants, and J. J. GARRETT, for the appellee, argued the several rul-

[Booker et al. v. Jones's Administratrix.]

ings to which exceptions were reserved in the court below, as presented by the assignments of error; and on application for a rehearing, the appellee's counsel cited the following authorities:

1. As showing that the plaintiff might, under the facts in evidence, maintain trover for the conversion of the cotton, against all the defendants—*Jones v. Webster*, 48 Ala. 109; *Ripley v. Dolbier*, 6 Shep. 382; *Murray v. Burling*, 10 John. 172; *White v. Phelps*, 12 N. H. 382; *McConeghy v. McCaw*, 31 Ala. 447; *Liplrot v. Holmes*, 1 Kelly, 381; *Ainsworth v. Partillo*, 13 Ala. 460; *Brooks v. Briggs*, 32 Maine, 447; *Crocker v. Gullifer*, 44 Maine, 491; *Gilman v. Hill*, 36 N. H. 311; *Thrall v. Lathrop*, 30 Vermont, 307; *Boyce v. Brockway*, 31 N. Y. 490; *Morrill v. Moulton*, 40 Vermont, 242; *Reynolds v. Shular*, 5 Cowen, 323; *Connah v. Hale*, 23 Wendell, 462; *Spencer v. Blackman*, 9 Wendell, 167; *Fail v. McArthur*, 31 Ala. 26; *St. John v. O'Connel*, 7 Porter, 466; *Freeman v. Scurlock*, 27 Ala. 407; *Rasco v. Willis*, 5 Ala. 38; *Whitlock v. Heard*, 13 Ala. 776; *Tucker v. Magee*, 18 Ala. 99; *Hotchkiss v. Hunt*, 49 Maine, 213; *Lee v. Matthews*, 10 Ala. 682; *Perminter v. Kelly*, 17 Ala. 71; *Jones v. Fort*, 36 Ala. 449: *Judson v. Cook*, 11 Barb. 642; *Brown v. Perkins*, 1 Allen, 89; *Hair v. Little*, 28 Ala. 236; *Layman v. Hendrix*, 1 Ala. 212.

2. As to the liability of the defendants in a special action on the case, under the second and third counts of the complaint—*Blick v. Briggs*, 6 Ala. 687; *Burnett v. Lynch*, 5 B. & C. 589; *Mast v. Goodson*, 3 Wils. 348; *Bretherton v. Wood*, 3 Brod. & Bing. 54; *Robinson v. Threadgill*, 13 Iredell, 39; *Butts v. Collins*, 13 Wendell, 154; 1 Hilliard on Torts, 256; *Manning v. Monaghan*, 23 N. Y. 539; *Skinner v. Gunton*, 1 Saund. 230, n. 4; *Van Pelt v. McGraw*, 4 Comstock, 110; *Thompson v. Spinks*, 12 Ala. 155.

BRICKELL, C. J.—1. It is insisted for the appellants that the mortgage is void, as a conveyance of the cotton, because it is a conveyance operating according to its terms, *in præsenti*, and the cotton had not then an actual or potential existence. The cause was before this court at a former term, and is reported as *Jones, adm'x v. Webster et al.*, 48 Ala. 109. It was then decided that the mortgage was a valid, operative conveyance, vesting in the mortgagee a legal title to the cotton as it came into existence.

The operation and effect of mortgages of personal property not in existence, or not owned by the mortgagor at the execution of the mortgage, the future acquisition of which was contemplated by the parties, is the subject of much discussion, and of great diversity of judicial decision. It is uni-

[Booker et al. v. Jones's Administratrix.]

versally admitted, and is a mere truism, that a sale, grant, or mortgage of property, real or personal, *in præsenti*, to which the vendor, grantor, or mortgagor has no title, or which has no existence, is inoperative and void, in a court of law or equity. If the thing exists as between the parties, possession being transferred, operation or effect may be given the sale or conveyance ; but, as against the party in whom the title resides, it is without force. If the thing has no existence, there is no subject of sale, grant, or mortgage. Things not *actually existing*, but having a *potential existence*, as it is usually expressed—" things which are the natural product or increase of something already existing, and the property of the vendor "—may be the subject of a sale, grant, or mortgage. A growing crop, however immature its state, and whatever of labor may be required for its cultivation to maturity, and its severance from the soil, is a personal chattel, subject at common law to execution against the tenant, passing to his personal representative, not descending with the land to the heir, and is the subject of sale or mortgage.—*Adams v. Tanner*, 5 Ala. 740 ; *Evans v. Lamar*, 21 Ala. 333 ; *McKenzie & Son v. Lampley*, 31 Ala. 528 ; *Robinson & Caldwell v. Mauldin, Montague & Co.*, 11 Ala. 977.

The mortgage was not of a growing crop ; the mortgagors had not entered on the leased premises, and had not a right to enter for more than two months after the execution of the mortgage ; and the cotton would not be planted for more than two months after the right of entry accrued. The mortgage was, therefore, intended to operate on cotton not planted, but which it was contemplated the mortgagors would, in proper season, after entry on the leased premises, plant and cultivate to maturity, and which during the term they should annually plant and cultivate. If no other relation existed between the parties than that of mortgagor and mortgagee, we incline to the opinion, that if, at law, the mortgage would be invalid as a conveyance of things not in existence, unless ratified by some act done by the mortgagor after their acquisition, in equity it would attach to the crop, as it came into existence, transferring the beneficial interest against the mortgagor and all others than a *bona fide* purchaser without notice.—1 Chit. Cont. 528–30 ; Benjamin on Sales, § § 78, 84 ; *Butt v Ellet*, 19 Wall. 544 ; *Sillers v. Lester*, 48 Miss. 513 ; *Stewart & Irvine v. Fry*, 3 Ala. 573 ; *Kirksey v. Means*, 42 Ala. 426 ; *Abraham v. Carter*, June term, 1875, in manuscript.

As between the mortgagor and mortgagee, standing in the relation of lessor and lessee, we concur in the former decision, that the operation and effect of the lease and mort-

gage is a reservation to the lessor of the title to the crops of cotton grown during the term on the leased premises, as a security for the performance of the lessees' covenant to pay the rent. The lease and mortgage were simultaneously executed, and relate to the same subject-matter; the mortgage recites and refers to the lease, and they are parts of one transaction, and may well be construed and considered as if they constituted a single instrument. The crop to be grown on leased premises is by statute subjected to a lien for the payment of rent, attaching to it as it comes into existence, and preserved against all the world except *bona fide* purchasers without notice. If it is removed, or is about being removed from the premises, the landlord may by attachment, in a court of law, subject it to the lien.—Revised Code, § § 2961-2-3. The statute does not change the title to the crop —no right of property, or right of possession, is conferred on the lessor. Property and possession remain in the tenant, or in the lessee; but a right to charge it, or, rather, a charge of the rent upon it, in priority of all other rights than those of a *bona fide* purchaser, is declared. As between lessor and lessee, the statutes regard a crop to be grown during the term as the subject of a lien in favor of the lessor.

We cannot perceive any substantial reason for declaring that the parties may not, by the stipulations of the lease, enlarge, or diminish, or entirely abrogate the statutory lien. It may not be deemed a sufficient security to the lessor for the payment of the rent; why may it not be enlarged by a reservation to him of the title to the crop as it comes into existence? It is the lease which deprives him of the title to the crops, which would follow as an incident to the fee; and we think it competent for him, in the creation of a term for years, to define the *quantum* of the interest the lessee may take a d hold, and the *quantum* of interest he will reserve. Leases, creating only mere terms for years, may be dependent on conditions, or reservations may be made, which could not be supported in conveyances of the fee. A condition, annexed to a grant of the fee simple, forbidding all alienation, would be void, because repugnant to the character and quantity of the fee. An incident to a lease for years is the right of the lessee to assign the lease, or to underlet the premises. A covenant against assignment, or against underletting, with a condition that its breach works a forfeiture of the lease, and that the lessor may re-enter, is valid. If the condition is broken, and the lessor re-enters, he is in as of his former estate; and a crop growing on the premises passes to him—*Davis v. Eyton*, 7 Bing. 154. But, if the lease contains a stipulation that, notwithstanding the

expiration of the term, the lessee should have the growing crop, and, having planted or sowed, he should transfer or sell it, the stipulation is operative, and the transfer or sale valid. Such was the case of *Grantham v. Hawley*, Hobart, 133, so generally referred to in support of the proposition, that a grant of that which the grantor has *potentially*, though not actually, is valid. In that case, the lease contained a covenant, that on the expiration of the term, the lessee should have the right "to take and carry away to his own use such corn as should be growing upon the ground." The lessee having sowed the corn, and afterwards the term expiring, made a sale of it, which was supported. The corn having been planted, was a chattel, the subject of sale; and title to it was by the lease reserved to the lessee, though the term expired before severance. The lease limited and qualified the reversion of the lessor.

Rent may be reserved, payable in kind, in the products of the soil; and if so reserved, whether title remains in the lessor, or passes to the lessee, is determinable by the words of the stipulation in the lease, and not on the inquiry whether the products exist *actually* or *potentially*, so as to be the subject of grant or sale. The lease may be so expressed, that the title to the crops will follow the term, until there is severance and delivery to the lessor, as in *Rhinhart v. Olive*, 5 Watts & Serg. 157, and other cases. Or, it may be reserved to the lessor, as in *Kelly v. Weston*, 20 Maine, 232, in which the tenant agreed to cultivate and bag the hop crop of the year for the lessor, in payment of the rent. Lands in this State are frequently let upon shares—upon contracts by which the tenant is to cultivate them, and share the crop with the landlord. The rights of the parties depend entirely on the particular terms of the contract, and their intention as it may be collected from these terms. No rule of law is offended, if the relation of landlord and tenant is not created; if it is a mere contract for the payment of wages, in a share of the crops; or if it is a mere tenancy in common of the crops, without transferring any interest in the soil, or transferring merely the bare right of occupancy.—1 Wash. Real Prop. 496–501. It is for the parties to define the relations which they may assume, and the rights and interests which are created. The lessor may except, or reserve from the lease, that which he does not choose to grant; and may retain a title to any part of the products the tenant consents he should retain.

In *Moulton v. Robinson*, 7 Foster (N. H.), 550, it is held, where lands are leased, reserving a part of the crops in lieu of rent, the contract takes effect by way of reservation, and

the crops thus reserved remain the property of the land-lord. So, in *Smith v. Atkins*, 18 Verm. 461, it was held, that a lease of land, reserving rent, and which provides that all the crops raised on the land during the term are to be the property of the lessor until the rent is paid, is valid, and will entitle the lessor to hold such crops against the creditors of the lessee. The same principle is affirmed in several subsequent cases in Vermont, cited in *Bellows v. Wells*, 36 Vermont, 599; and is held in *Lewis v. Lyman*, 22 Pick. 436. Regarding the lease and mortgage as one instrument, the result is, that the lessor reserved to himself the title to the crops of cotton grown on the leased premises during the term, until the rent was paid, and until payment of the rent title to them could not vest in the lessee.

3. While the title to the cotton is reserved to the lessor, possession is reserved to the lessee, until the rent of the year in which it is grown becomes due and payable; and coupled with the possession, the lessee has the authority to ship it for sale to a factor of his selection. Such separation of the title and the possession is generally found in mortgages of real and personal property in this State, and results from the character of a mortgage, which, though it operates as a conveyance, vesting title in the mortgagee, is intended as a security for a debt. In the absence of such reservation in a mortgage, the possession would follow the title, and could be taken by the mortgagee, even before the law-day, or, speaking more accurately, before the mortgage debt became due, and there was default in its payment.—*Ellington v. Charles*, 51 Ala. 168; *Pickard v. Low*, 3 Shep. 48. If possession was reserved to the mortgagor, it was, prior to the statute (R. C. § 2871), a right of property subject to levy and sale under execution at law.—1 Brick. Dig. 905, §§ 207-212. The stipulation in the mortgage operates a reservation to the lessees of the possession and right to the possession of the cotton crop grown on the leased premises, until the 31st of December of each year, when the rent becomes due and payable. Until that day, the lessor, though having the title, as a strict mortgagee would have, has no right to the possession. If, when that day arrived, the lessees had not exercised the authority to ship the cotton, the possessory right with which they are clothed having terminated, the title of the lessor would draw to it the possession. But, having exercised the authority, as in the case before us, the lessor's right to possession cannot attach, and his right is then to payment of the rent, from the proceeds of sale. The cotton was shipped and sold, when the lessees had possession, and the right of possession, and authority to ship it for sale. Conversion is the gist of

an action of trover; and to support the action there must be a concurrence of the right of property, general or special, and of possession, or the immediate right of possession, in the plaintiff at the time of the conversion.—1 Chit. Pl. 148-151; *Ellington v. Charles, supra; Pickard v. Low, supra; Wheeler v. Train,* 3 Pick. 255. The appellee not having possession, or the right of possession, when the shipments and sales of the cotton were made (if they could be deemed a conversion), though the right of property resided in her, could not maintain trover, whatever other remedy the evidence may authorize.

Nor can the shipment and sale of the cotton be deemed a conversion. There was no wrongful taking, or wrongful detention—no illegal assumption of ownership, or illegal user, or misuser. The shipment and sales were authorized by the stipulation. A conversion is always tortious, and from it no rights can be acquired.—*Sargent v. Blunt,* 16 Johns. 74; *Bromley v. Coxwell,* 2 Bos. & Pul. 438; *Jones v. Font,* 9 B. & C. 764. If the shipment and sale were tortious, the purchasers from the factors acquired no title, which they could maintain against the appellee, and would be equally liable with the factors and the lessees to an action of trover,—a proposition which would scarcely be asserted.

4. The stipulation requires the factors, to whom the cotton is shipped, from the proceeds of sale to pay the lessor the rent of the current year. The factor having made the sale, and having notice of the lessor's rights, before paying over the proceeds to his principal, becomes liable to pay the lessor so much of the proceeds as may be necesssary to satisfy the rent. An agent, receiving money to which his principal is not entitled, which, *ex æquo et bono,* belongs to another, on demand made, or notice being given him of the right of the true owner, becomes liable to him, and cannot relieve himself from the liability by a subsequent payment to his principal.—Story on Agency, §§ 300, 301; *Houston v. Frazier,* 8 Ala. 81; *Gayle v. Benson,* 3 Ala. 234. The proceeds of sale, or so much thereof as would pay the rent, could be recovered by the lessor of the factor, in an action for money had and received. Such action lies, whenever the defendant has money which, *ex æquo et bono,* belongs to the plaintiff, and which the defendant has not a legal or equitable right to retain. No privity of contract is essential to support it, except that which the law implies.—1 Brick. Dig. 140, §§ 72, 73.

The factor may have made advances to the lessees, or to his principal, if another than the lessee, entitling him, as against the principal, to a lien on the cotton, or the proceeds

of sales. The lien cannot be asserted against the lessor; nor would the factor, because of such advances, have any right, legal or equitable, to retain against the lessors. To constitute the factor's lien for a balance due him from his principal, two things must concur—possession by the factor, and a right in the principal to the property, upon which the lien is to operate. Therefore, it has been held, that if, before the goods come to the possession of the factor, the principal has divested himself of right and title, the lien cannot attach.— *Ryberg v. Snell*, 2 Wash. C. C. 403; *Mauldin, Montague & Co. v. Armistead*, 14 Ala. 702; *Swilley & Riley v. Lyon & Baker*, 18 Ala. 552. Or, if the goods come to his possession after a secret act of bankruptcy, committed by the principal, he is not entitled to retain for advances made after such act, though on the faith of the consignment.—Story on Agency, § 377. The liens which the law creates in favor of agents, and factors, and carriers, in the interest of trade and commerce, operate only on the right and title of those with whom they deal. If *they* have no title, or a qualified, conditional title, it is the misfortune of those who trust them. In *Robinson v. Baker*, 5 Cush. 137, it is held that a common carrier, who innocently receives goods from a wrongdoer, without the consent of the owner, express or implied, has no lien upon them for their carriage against such owner; and it is said, "Upon this settled and universal principle, that no man's property can be taken from him without his consent, express or implied, the books are full of cases, many of them hard and distressing cases, where honest and innocent persons have purchased goods of others, apparently the owners, and often with strong evidence of ownership, but yet who were not the owners, and the purchasers have been obliged to surrender the goods to the true owners, though wholly without remedy for the money paid. There are other hard and distressing cases, of advances made honestly and fairly, by auctioneers and commission-merchants, upon a pledge of goods by persons apparently having the right to pledge, but who in fact had not any such right, and the pledgees have been subjected to the loss of them by the claim of the rightful owner. These are hazards to which persons in business are continually exposed by the operation of this universal principle, that a man's property cannot be taken from him without his consent."

The factor, under the stipulation we are considering, would have the right to retain the ordinary commissions for making sales, and such charges as he may have paid for the transportation, and in the sales of the cotton. The right of the lessor is to the net proceeds—or the payment of the rent

from these—the shipment and sale being within the stipulation, and necessary to give it effect. Beyond this, he has no lien, but takes the cotton, and sells, and holds the proceeds of sales, as his principal held and shipped, subject to the liability the principal had impressed on it, having notice of such liability, before paying the proceeds to the principal. We mean, of course, a payment in money, and not a mere passing of the proceeds in account to the credit of the principal. There must, before notice of the right, have been a change by the factor of his situation from that in which he stood when the cotton came to his possession, to entitle him to retain, or to defend against the claim of the lessor.—Story on Agency, § 300.

From the view we have taken of the rights of the appellee, and of the liabilities of the factors, and of the lessees, it is apparent the present action is misconceived. The only grievance of which the appellee can complain is, that the factors have not, from the proceeds of the sales of the cotton, paid her the money to which she is entitled; or that the lessees have not paid the rent, as by the covenant in the lease, and the promissory notes made by them, they were bound to pay. The refusal and failure of the factors, or of the lessees, is a breach of promise, not a tort, for which the appellee can have adequate redress in forms of action *ex contractu*, but not in an action *ex delicto*. The distinctions between these forms of action are not obliterated, but preserved by our statutes. It is important that they be observed; "else we shall fall into a distressing state of uncertainty and confusion." In *Masters v. Stratton*, 7 Hill, 104, it is said by NELSON, C. J., "but where the action is not maintainable without referring to a contract between the parties, and laying a previous ground for it by showing such contract, then the plaintiff must proceed upon the contract, and a special action on the case will not lie." Applying the rule to this case, it seems clear that the only remedy of the appellee is *ex contractu*. The liabilities of all the parties rest in contract, and are essentially different, not common in obligation, and incapable of joinder in a suit against all of them. The liability of the factor is in an action of assumpsit, for money had and received. It springs out of the contract between the lessor and the lessees—without that contract, it would have no existence, and without reference to that contract cannot be shown. No such liability rests on the lessees—they have not received money to which the appellees are entitled. Their liability is for the rent, and rests on the covenant in the lease, and the promissory note.

If one person receives money, to be paid to another, the

[Daniel v. Stewart.]

duty and obligation of payment ariso; or, if one, on a sufficient consideration, verbally promises another to pay his debt to a third, the promise is valid; and in either case, the person to whom the money is to be paid, may recover of the promisor in an action *ex contractu*, but not in an action *ex delicto*. If the present action was supported, the well defined distinction between actions would be disregarded, and any breach of promise might be converted into a tort. The shipment of the cotton, and its sale, were not tortious. Of these the appellee cannot complain, because the stipulation of the mortgage, into which the lessor entered, authorized each. We repeat, her only grievance is the failure of the factors to pay her money to which she is entitled, or of the lessees to pay the rent. No other wrong has been done. For this wrong, an action *ex contractu* is the appropriate, and the only remedy.—*Hodgers v. Lathrop*, 1 Sand. 46.

The judgment must be reversed, and the cause remanded.