## ALLEN *vs.* HARPER.

1. Under a written contract between an overseer and his employer, whereby the latter agrees to give the former for his services " three-sixteenths of all the cotton raised on the place, and to gin and haul his cotton, with his own, free of charge," the overseer is entitled also to three-sixteenths of the cotton seed, and is a co-owner with his employer both in the cotton and the seed, until a division is made between them ; but a delivery of the cotton, after ginning, would not operate as a delivery of the seed.

2. When the judgment entry recites, that the parties appeared by their attorneys and a trial was had on issue joined, while no complaint is found in the record, it will be presumed, on error, that the complaint was either dispensed with, or lost ; and if the evidence set out in the record is sufficient to sustain an action in tort for the conversion of the property sued for, but not sufficient to support an action *ex contractu*, it will be presumed that the action was in tort.

3. In an action to recover damages for the conversion of a chattel, if the plaintiff is the several owner, he would be entitled to recover upon proof of a demand and refusal ; but if his interest had never been separated, he could not recover against a co-owner, without proving also that the conversion went to the destruction of the chattel, or the exclusion of his right.

APPEAL from the Circuit Court of Perry.

Tried before the Hon. THOMAS A. WALKER.

THIS action (Benjamin G. Harper v. William Allen) was commenced before a justice of the peace, whose summons describes the action as " a plea of debt under fifty dollars due by account." The justice rendered judgment for the plaintiff, from which the defendant appealed to the Circuit Court.— The record does not show that the plaintiff there filed any statement, or complaint; but the judgment entry recites, that " the parties came by their attorneys, and thereupon, issue being joined, came a jury," &c., who returned a verdict for the plaintiff, assessing his damages at $34 67.

The defendant's bill of exceptions states, that the plaintiff, on the trial, read in evidence to the jury, after proving its execution, an instrument in writing in these words :

" Articles of agreement, entered into this the 8th day of December, 1851, between B. G. Harper, of the first part, and Richard Lee, of the second part. First, the said Benj. G.

Harper does hereby obligate himself to attend to the said Richard Lee's business as an overseer, during the year 1852, to the best of his ability. Second, the said Richard Lee does agree to give the said B. G. Harper full control, so far as the management of the slaves is concerned, but reserves to himself the right to have a voice in the management of the crop. Furthermore, the said Richard Lee agrees to furnish the said B. G. Harper with seven good hands, and all the necessary implements used in farming, and to pay him three-sixteenths of all the cotton, corn and fodder made on the place during the year 1852; and agrees, furthermore, to board, wash and furnish the said Harper with a horse to ride on Sabbath days, clear of any charge for the same; he agrees, also, to gin and haul the said B. G. Harper's cotton, with his own, clear of charges. These articles of agreement we, the undersigned, have this day entered into, in witness of which we hereunto affix our names. (signed) Benjamin G. Harper, Richard Lee."

"The plaintiff then proved, that he complied with said agreement on his part, and raised on said Richard Lee's farm, with the means furnished him under said agreement, a crop of corn and cotton in the year 1851; that the cotton was duly gathered, and ginned, and packed, without any division; that as said cotton was ginned, the cotton seed were in part put up in the gin-house, and in part thrown out in a pile by said gin-house, but that said cotton seed were at no time divided between himself and said Richard Lee, and that three-sixteenths thereof were not divided and delivered to him; that fifteen of the forty-five bales of cotton which were raised on said farm were marked in plaintiff's name, and delivered to him after they had been ginned and packed; that three-sixteenths of the cotton seed, ginned out of said forty-five bales of cotton, amounted to three hundred and twenty bushels, and that the same were reasonably worth ten cents per bushel; that about the 26th or 27th December, 1851, and again in February, 1852, he demanded his said three-sixteenths of said cotton seed from the defendant, who, in the fall of the year 1851, bought the plantation of said Lee, with his stock of mules, horses, cows, and other property, and went into possession of the same, and also of the said cotton seed, about three or four

weeks before the 25th December, 1851 ; that defendant refused to deliver said seed to said plaintiff, but agreed with him that he was willing to leave it to some of their neighbors, whom they selected,—then that he was willing to do what was right about it, and the day to arbitrate was appointed ; that plaintiff attended, with the arbitrators, but that defendant failed to attend, and sent no excuse.

"The defendant then showed, that said cotton seed were on said plantation when he obtained the possession thereof from said Lee, and that he had no notice of said plaintiff's claim to three-sixteenths of the same until plaintiff demanded them on said 26th or 27th December, 1851 ; but it was in evidence, that defendant knew that plaintiff was living with Lee for three-sixteenths of the crop, but he had no notice of plaintiff's claim to the cotton seed until plaintiff demanded it of him. It was in evidence, also, that said cotton seed were never actually divided between plaintiff and said Richard Lee, and that plaintiff was not placed in possession of his share thereof; and that defendant used said seed in planting his crop in 1852, and in manuring his land. Defendant offered testimony, also, going to show that the term cotton meant cotton lint, and did not embrace cotton seed, but the proof on this point was conflicting. It was proved, also, that said cotton seed were on said plantation when defendant obtained possession thereof ; and that plaintiff had received his share of the corn and fodder. Plaintiff did not offer any proof to show a delivery of the cotton seed, except the delivery of said fifteen bales of cotton.

"On this evidence, the court charged the jury :—

"1. That the term cotton, mentioned in said written agreement, embraced the cotton and the cotton seed.

"2. That if they believed that as much cotton was delivered to plaintiff, after the same was ginned and packed into bales, as amounted to plaintiff's share as shown in said agreement, that was, in law, a sufficient delivery also of the cotton seed, and would vest in plaintiff a sufficient title to authorize him to maintain this suit for their value."

The defendant excepted to these charges, and asked others, which it is unnecessary to notice.

No errors are assigned on the record.

I. W. GARROTT, for the appellant.

JOSEPH R. JOHN, contra.

GOLDTHWAITE, J.—By the agreement made between the appellee and Lee, the former was to receive for his services "three-sixteenths of all the cotton made on the place", &c.; and if the agreement had stopped there, it might have been doubtful whether Harper would have been entitled to any portion of the cotton seed. But it is rendered certain by the last clause, by which Lee agrees to gin the cotton for Harper free of expense. This shows that the cotton was to belong to the latter before it was ginned, and, as the ginning was free of charge, the seed would belong to the owner of the cotton. The agreement being in writing, it devolved on the court to construe it; and as the construction given was in conformity with the views we have expressed, there was no error.

We think, however, that the charge that the delivery of the cotton operated as a delivery of the seed, was erroneous. It is clear that, under the terms of the contract with Lee, Harper was a co-owner with him both in the cotton and the seed, until their interests were divided. In the process of ginning, the lint and seed were separated, and the two became as essentially distinct as cotton and corn, and the severance of the share which the appellee had in the one would not necessarily be a severance of his interest in the other. That would remain in the same condition as before the cotton was divided.

But it is urged, that no injury was done to the appellant by this error. No statement or complaint is found in the record; but, as it appears that the parties appeared by attorney, we are authorized to presume, that it was dispensed with, or lost.—Bancroft v. Stanton, 7 Ala. 351. Giving the most favorable construction to the evidence set out in the bill of exceptions, it would not sustain a complaint *ex contractu*, for the reason, that although it tends to show a conversion, there is nothing conducing to prove that the wrong-doer sold, or converted the property into money.—Crow v. Boyd, 17 Ala. 51; Bohannon v. Springfield, 9 *ib.* 789. If we suppose the complaint was *in tort*, to recover damages for the conversion,

then, under the charge, the jury might have found in favor of Harper, if his undivided interest in the seed was severed by the delivery of the cotton; while if he was simply the co-owner, the law, to sustain the action against his companion, would have required him to go further, and prove that the conversion went to the destruction of the chattel, or the exclusion of his right.—Parminter v. Kelly, 18 Ala. 716. The effect of the charge was, to place the appellee before the jury in the more favorable position of the several owner of the thing converted, and thus enable him to recover upon a demand and refusal, which might not have been sufficient if the other party was the owner in common with him.

Judgment reversed, and cause remanded.