JUDGE PRYOR
delivered the opinion op the court.
On the 16th of October, in the year 1867, U. H. Ford rented of A. T. Stevenson his farm in Scott County for one year, the term beginning on the 1st of March, 1868, and ending on the 1st of March, 1869, for the sum of seven hundred dollars, and for the payment of which he executed his note, with the appellee, Frank Ford, his surety. U. H. *319 Ford, in order to secure the appellee in his liability as his surety on the note for the rent, executed to him a mortgage on all the crop that might be raised on the farm during the term. The mortgage was executed on the same day the contract of renting took place — viz., on the 16th of October, 1867 — and on that day was recorded in the clerk’s office of the Scott County Court. After the execution of the mortgage, and during the term for which the lessee U. H. Ford held the premises, the latter raised on the farm a crop of wheat that was harvested and sold by him or his agent to the appellants, Hutchinson, McChesney & Co., and forwarded to them at their business house in Lexington, Ky.
The appellee, Frank Ford, being compelled to pay the rent, or having been made liable therefor, instituted the present action in equity to foreclose his mortgage, making the appellants, Hutchinson, McChesney & Co., defendants, and alleging their liability to him for the value of the wheat purchased by them of U. H. Ford by reason of his lien created by the mortgage.
Upon the hearing of the cause a judgment was rendered against the appellants, and from which they prosecute this appeal, insisting here, as they did in the court below, that although the appellee’s mortgage was properly executed and recorded, still as the wheat for which they are made liable was not then planted or sown no title passed to the appellees as against a subsequent purchaser without actual notice; and this is the essential question in the case.
The elementary writers upon the subject of sales of personal property lay down the doctrine that the thing sold must have either an actual or potential existence in order to pass the title to the purchaser, and in defining what is meant by a potential existence it is said “ that things have a potential existence which are the natural product or the expected increase of someT thing already belonging to the vendor.”
*320 There may be an agreement to sell all and every species of personal property not prohibited by law, whether the vendor owns it at the time or not; and, although the subject-matter of the agreement has neither an actual nor potential existence, such an agreement is usually denominated an executory contract, and for its violation the remedy of the party injured is by an action to recover damages. In a sale, however, of things personal the title passes to the vendee, and he may maintain an action for the property sold as well as damages for its detention; and in order to vest him with these legal rights the property sold must necessarily have an existence at the time the sale is made. The authorities conflict to some extent on the question presented, and many of the illustrations given in the books are more calculated to confuse than enlighten the mind in the investigation of the principle involved, and still the rule as to what may be the subject of sale can be better understood in the illustrations to be found in the cases cited than by the enunciation of any general principle on the subject. In this case it is fair to presume that the party leasing the land had sown no crop upon it, as the mortgage was executed in October, 1867, and the time of renting did not commence until the March following. It was at the option of the lessee whether he would sow wheat or other grain upon the premises; or, if he saw proper, might have declined to cultivate the farm at all; and the fact that he had the right to. the possession of the land for one year by reason of his lease gave neither an actual nor potential existence to crops that had not been sown upon it; and although he may have expected to sow and reap, and may have held the fee-simple title to the land upon which the grain might have been produced, still the crop had no existence until its growth was developed in some form.
The case of Milliman v. Nahn (20 Barb. 38) is very similar to the one now being considered. It was there held that a *321 chattel mortgage passed no title to crops, because they had no existence at the time of its execution and delivery.
Chief Justice Shaw, in Barnard v. Eaton (2 Cush. 295), decided that a mortgage could not apply to goods not in existence, or capable of being identified at the date of its execution; and in the case of the Bank of Lansingburgh v. Crary (1 Barb. 542) it is said “ that a chattel mortgage can not be given on the future products of real estate; and if given one day or one week before the product of the land comes into existence, it is as inoperative as if it had been given on a crop of grass or grain one, two, or three years previous to its production.” The same doctrine was again recognized in the case of Otis v. Sill (8 Barb. 102), it being there held that a grant or mortgage of property not in existence was void in law.
In the case of Comstock v. Scales (7 Wis. 159) the mortgage was executed upon a crop of oats, wheat, and corn about the time some of it was planted, and before it presented the appearance of growing grain; and it was there adjudged that the mortgage could only operate upon property in existence at the time of its execution, and that the court below erred in instructing the jury that as soon as the grain was sown it was the subject of mortgage.
In Sheppard’s Touchstone (page 241) it is said that trees, grass, and corn growing and standing on the ground, fruit upon trees, and wool upon the sheep’s back, may be mortgaged, and this is the true rule upon the subject. When the crop is growing, although not matured, it may be sold or mortgaged; but when the fruit is to be obtained from the tree that is to thereafter blossom and form it, or the grain to be grown on ground thereafter to be sown, it is difficult to conceive how such an existence can be given it as to make it the subject of an executed contract, by which the title passes to the purchaser. Agreements to sell may be made with reference to *322 such potential interests, but no such agreement as would vest the party buying with any title.
Chattel mortgages, when properly executed and recorded in the county where the property is, operate as constructive notice, both in and out of the county, of the vendee’s lien; and although the property is movable in its nature, and may be carried into other counties than where the mortgage is recorded, yet the lien of the vendee is allowed to be asserted against subsequent purchasers in or out of the county, upon the idea that the legal title is in him, and the mortgage of record is constructive notice to those who buy. The policy of permitting the lien of the mortgagee to prevail where the property is removed from the county where the lien is of record has been much doubted, but the question is now too well settled to be disturbed. It would certainly be carrying this doctrine to a very great extent in permitting liens to be created by mortgage, either in or out of the county where the parties live, upon property not in esse, and the purchaser should not be required in an investigation of the title to go back prior to the existence of the property itself in order to be informed of the right of the party in possession to sell.
The case therefore as now presented is against the appellee upon the legal principle involved, as well as the question of public policy.
It has been suggested in the argument of the case that the wheat embraced by the terms of the mortgage was growing upon the ground at the date of its execution. If so, the appellee may amend his pleading with a view of asserting his claim, if he has any. It may be well enough to remark that the petition contains no allegation by which the chancellor is to know that the appellee has sustained any loss by reason of his liability as surety, and certainly no proof that he has ever paid one dollar of the note to Stevenson. While he might as mortgagee have instituted his action at law to recover the *323 specific property mortgaged (if the subject of a mortgage), in a court of equity he will be required to show some equitable right to the proceeds of the mortgaged property before the chancellor will compel the purchaser to account to him for its value.
The judgment of the court below is reversed, and cause remanded with directions to permit either party to amend their pleadings, and for further proceedings consistent with this opinion.