# Mayer & Co. *v.* Taylor & Co.

*Action on the Case by Mortgagee of Unplanted Crops against Purchaser with Notice.*

<table>
<tr><td>69</td><td>403</td></tr>
<tr><td>98</td><td>532</td></tr>
<tr><td>69</td><td>403</td></tr>
<tr><td>107</td><td>363</td></tr>
<tr><td>107</td><td>717</td></tr>
<tr><td>69</td><td>403</td></tr>
<tr><td>117</td><td>692</td></tr>
<tr><td>69</td><td>403</td></tr>
<tr><td>120</td><td>639</td></tr>
</table>

1. *Mortgage of unplanted crop ; title conveyed thereby.*—It is the settled ·doctrine of this court, that a mortgage executed by the owner or lessee of land on a crop which is not planted, but is to be planted *in futuro,* ·conveys to the morgagee, not the legal title, but merely an equitable interest or title.

2. *Same ; when lien attaches ; relation of the parties.*—The lien of such a mortgage attaches as soon as the crop comes into existence ; and the mortgagor, or his assignee with notice, becomes a trustee, holding the legal title for the benefit of the mortgagee.

3. *Mortgages on unplanted crops ; priority of lien.*—P. having leased land for farming purposes, in February, and before planting his crop, ex-·ecuted to T. & Co., a mortgage on the cotton crop to be raised on the land during the year by himself, or by his procurement, and soon thereafter, and before the crop was planted, formed an equal partnership with K. who had knowledge of the mortgage to T. & Co., for the cultivation of the land during that year. After the crop was planted the partnership executed a mortgage to M. & Co., they also having knowledge ·of the mortgage to T. & Co. on the cotton crop to be raised by them during that year on said land, to secure advances made to the firm to enable them to make the crop. A crop having been raised on the land by the partners, they delivered a part of the cotton, after it was gathered, to M & Co. *Held*, in an action on the case brought by T. & Co. for the recovery of damages for a conversion of the cotton ;

(*a*) That the interest which K. took, when the partnership was formed, in the crops to be grown, was subject to the equitable lien already created in favor of T. & Co.

(*b*) That the lien of the mortgage to T. & Co. was superior and paramount to the lien of the mortgage to M. & Co., on the whole crop of cotton raised by the partnership. (STONE, J., *dissenting, held,* that T. & Co. had a prior lien on P.'s half of the cotton, and only on that half.)

APPEAL from Greene Circuit Court.,
Tried before Hon. WM. S. MUDD.

[Mayer & Co. v. Taylor & Co.]

This was an action on the case brought by Taylor & Co. against Mayer & Co. to recover damages for the alleged conversion by the defendants of six bales of cotton, on which the plaintiffs had an equitable mortgage, of which the defendants had notice. The complaint also contains a count in trover. The other pleadings are not set out in the record. The evidence introduced on the trial was substantially as follows: One W. W. Pendergrast, on or about the 1st January, 1880, rented a tract of land for the purpose of farming, and on 5th February, 1880, he executed to the plaintiffs a mortgage, by which he bargained, sold and conveyed to them "the crop of cotton which he might raise, or procure to be raised during the year 1880," on the rented lands, to secure advances made by them to enable him to make a crop. This mortgage was duly recorded on 18th February, 1880. A short time after the execution of this mortgage, Pendergrast and Mrs. D. A. Kelley entered into an agreement " to work the said lands in partnership, sharing the profits and losses equally." On the 14th May, 1880, said Kelley & Pendergrast executed to the defendants a mortgage on the cotton crop to be raised by them during that year on said rented lands, to secure the defendants for advances which they agreed to make to said firm during the year, and which they did make in pursuance of such agreement, to enable them to make a crop. The defendants, at the time of the execution of the mortgage to them, had actual notice of plaintiffs' mortgage, and were also informed of the partnership formed between Mrs. Kelley and Pendergrast, and the terms thereof. Mrs. Kelley and Pendergrast worked said lands during the year and raised thereon the six bales of cotton in controversy "under their partnership agreement," each furnishing the same amount of team and labor. At the time the agreement was entered into, "nothing had been done towards making said crop, except that about three acres of stubble land had been broken up, which had to be plowed over again." On 20th November, 1880, Mrs. Kelley and Pendergrast delivered to the defendants the six bales of cotton, in payment of the debt secured by the mortgage to them, and the defendants sold the cotton for $229.00 ; but before the sale thereof the plaintiffs demanded of the defendants the cotton, and they refused to deliver it. It was also shown that Pendergrast owed the plaintiffs a balance on the debt secured by the mortgage executed to them, which was less than the amount for which the cotton was sold ; and that the partnership of Kelley & Pendergrast owed one Smith about $100, which was still due and unpaid.

The court, at the request of the plaintiff in writing, charged the jury " that if they believed the evidence they must find for the plaintiffs for the amount shown to be due on their said

[Mayer & Co. v. Taylor & Co.]

mortgage debt, with interest thereon since the same became due." To the giving of this charge the defendants excepted. The defendants asked the court in writing to charge the jury, "that the said Pendergrast was not prohibited by the mortgage to said Taylor & Co. from farming said lands in partnership with another, and that in this case the said Taylor & Co. were entitled under said mortgage only to the interest of said Pendergrast in said cotton, after the claims of Mrs. Kelley and the partnership creditors were satisfied; and that the plaintiffs, therefore, could not recover in this action." The court refused to charge the jury as requested by defendants, and they excepted. A judgment was rendered for the plaintiffs on verdict, and the defendants appealed.

The rulings of the Circuit Court above noted are here assigned as error.

HEAD & BUTLER, for appellants. (No brief came to the hands of the reporter.)

WM. P. WEBB, contra, cited 53 Ala. 432: 60 Ala. 537; 54 Ala. 670; 60 Ala. 214; *Collier v. Faulk & Martin*, ante, p. 58; *Rees v. Coats*, 65 Ala. 256; *Mayer v. Clark*, 40 Ala. 259; *Reese v. Bradford*, 13 Ala. 837.

SOMERVILLE, J.—The subject of mortgages on unplanted crops, not *in esse* at the time of the conveyance or assignment, has been the subject of much discussion, and the adjudged cases are greatly conflicting. Some of them hold that such a mortgage is *void*, and conveys no title to the crops, either legal or equitable.—*Hutchinson v. Ford*, 9 Bush (Ky.) 318; s. c. 15 Amer. Rep. 711; *Comstock v. Scales*, 7 Wis. 159. Others hold that they are *valid at law*, and good to convey a legal title.— *Arques v. Wasson*, 51 Cal. 620; s. c. 21 Amer. Rep. 718; *Robinson v. Ezzell*, 72 N. C. 231; Jones on Chat. Mortg. § 143. Neither of these extreme views, however, has been adopted by this court. Its doctrine in reference to this subject is now firmly settled, that a mortgage executed by the owner, or the lessee of land, on a crop which is not planted, but is to be planted *in futuro*, conveys to the mortgagee a mere *equitable* interest or title, which will not support an action of detinue, trover, or trespass.—*Grant v. Steiner*, 65 Ala. 499; *Rees v. Coats, Ib.* 256; *Booker v. Jones*, 55 Ala. 266; *Abraham v. Carter*, 53 Ala. 8. This view, is, in our opinion, supported by the weight of authority.—*Moore v. Byrum*, 30 Amer. Rep. 58; [s. c. 10 S. Ca. 452.] NOTE, p. 63; *Fonville v. Casey*, 4 Amer. Dec. 559, NOTE, p. 560; *Sillers v. Lester*, 48 Miss. 513; and other cases cited in *Grant v. Steiner, supra*.

[Mayer & Co. v. Taylor & Co.]

The principle lying at the basis of these decisions is, that a thing having a *potential existence* may be mortgaged or hypothecated. By potential existence we understand a present interest in property, of which the thing sold or conveyed is the product, growth or increase, as opposed to a mere possibility or expectancy, not coupled with such an interest.—Benjamin on Sales, § 78; *Low v. Pew*, 108 Mass. 347. Hence an assignment of future wages, there being no existing contract of service, is invalid; but the assignment is good where there is such a contract of service.—*Mulhall v. Quinn*, 1 Gray, 105. It is commonly said that a man may sell the wool to be clipped from his sheep at a future time, or the milk his cows may yield in the coming month or year, and the sale is valid; but not so as to the wool of any sheep, or the milk of any cow which he may acquire at any time in the future, even though it be but the next hour.—Benjamin on Sales, § 78. The clear distinction is that in the latter cases, the subject of the contract is not *in rerum naturæ*, or, as is commonly said, *in esse*.

"Land is the mother and root of all fruits. Therefore he that hath it may grant all fruits that may arise upon it after, and the property shall pass as soon as the fruits are extant."—*Grantham v. Hawley*, Hobart Rep. 132. There can be no valid distinction between the wine a vineyard is expected to produce, and the grain or cotton a field is expected to grow, except as to the relative amount of skill and personal labor that may be expended in the two cases. Each is the product of property, owned *in præsenti* by the vendor in the case of a sale.—Story on Sales, § 183. In *Andrew v. Newcomb*, 32 N. Y. 417, it was said: "In the case of crops to be sown it [the title] vests potentially from the time of the executory bargain, and actually as soon as the subject arises." In other words, the lien attaches, *eo instanti*, when the property comes into existence. They come into being together and co-exist, and equity executes the contract by holding that done which is agreed to be done. So soon as the crop, or other thing mortgaged exists, the vendor, or his assignee with notice, becomes a trustee holding the legal title for the benefit of the mortgagee. And whenever this equitable ownership, or interest, is once established, the courts will interpose for its protection.—*Sillers v. Lester*, 48 Miss. 513.

It is plain from these principles that the mortgage executed by Pendergrast to the appellees, Taylor & Co., on February 5, 1880, conveyed to the latter an equitable title or interest in all the crops raised during the current year, on the lands, by the mortgagor or "by his procurement."

The question presented is, whether he can be permitted, before the planting of the crops and after making this conveyance, to assign an interest in them to a third person, to the prej-

udice of the lien already created in favor of the first mortgagees. The evidence shows that soon after making the mortgage to Taylor & Co., Pendergrast formed a co-partnership with a Mrs. Kelley for the cultivation of the lands of which he was then in possession, and on which the six bales of cotton in controversy were grown, and that the two contributed work and labor jointly, under the agreement that the profits in the business were to be equally divided between them as partners, carrying on the farming business under the firm name and style of Kelley & Pendergrast. The partnership mortgaged the property on May 14, 1880, to the appellants, Mayer & Co., and delivered the cotton to them the following fall, they having notice of the prior mortgage to Taylor & Co. The contention is between the lien of the two mortgages.

Our opinion is that, under this state of facts, the interest taken by Mrs. Kelley in the crops to be grown, was taken subject to the equitable lien already created, and of which she had notice. The contribution made to the partnership by Pendergrast was the land with its potential capacity for future products, and his teams and personal services. These were already subject to the operation of an agreement creating an equity against them. When the products or crops came *in esse*, the mortgagor was to hold the legal title as trustee for the first mortgagees. The interest assigned to the partner, who was let in, was an undivided half interest as tenant in common of every thing produced. The assignee, Kelley, could acquire no greater interest than the assignor had, and must therefore have taken it *cum onere*. *Nemo plus juris ad alium transferre potest, quam ipse habet.* (Coke Litt. 309, b.) As between the conflicting liens of the two mortgages, we see no reason which rescues them from the operation of the maxim, that "he who is first in time is stronger in right." The mortgage given to the defendants, Mayer & Co., being taken with full notice of the mortgage previously executed to plaintiffs was subordinate to it, and the court ruled correctly in so charging.

The judgment is affirmed.

STONE, J., *dissenting.*—I differ with the majority of the court in this case.

Pendergrast had rented lands for the year 1880, on which he proposed to make a crop. On the 5th of February, 1880, he executed a mortgage to C. H. Taylor & Co., and therein conveyed to them "the crop of cotton which he might raise or procure to be raised" on said rented land during that year, to secure payment to them for a horse and other things advanced to him to make a crop. The mortgage was recorded in the proper probate office, February 18, 1880. It is common knowl-

[Mayer & Co. v. Taylor & Co.]

edge that crops of cotton are not planted in this State until after February 5th. Under our rulings this was a valid mortgage (the cotton then having a potential existence), and bound the crop afterwards planted and grown, to the extent expressed in the mortgage. The difference between such a mortgage, and one which conveys chattels which have an actual existence, is in the character of the title it confers. The former creates a mere lien, or equity; the latter a legal title. This changes the remedy, but, in other respects, does not impair the right. In each event, the mortgage-interest will prevail over rights or liens afterwards acquired, with actual or constructive knowledge of the prior mortgage.—*Booker v. Jones*, 55 Ala. 266; *Rees v. Coats*, 65 Ala. 256; *Grant v. Steiner*, 65 Ala. 499.

After the execution of the mortgage described above, but before the crop was planted, Pendergrast formed a partnership with Mrs. Kelley in the lease of said land, and in the crop to be grown thereon; and the crop was made by means and labor furnished by each—a son of Mrs Kelley laboring for her. This partnership was to be equal in profits and losses; and each furnished the same amount of team and labor.

On the 14th of May, 1880, the firm or partnership of Kelley & Pendergrast executed a mortgage on their crop, to defendants, Mayer & Co., to secure them for advances the latter merchants made to the firm, to enable them to make the crop. The present contention is over the cotton grown by said firm of Kelley & Pendergrast on said rented land. The Circuit Court ruled that Taylor & Co., the mortgagees of Pendergrast, had a paramount lien on the whole crop grown, over Mayer & Co., the mortgagees of the partnership; and my brothers have affirmed the judgment of the Circuit Court.

My own judgment is, that Taylor & Co. have a prior lien on Pendergrast's half of the cotton, and only on that half. This lien, I think, is paramount to that of Mrs. Kelley, the co-partner, and to that of Mayer & Co., the mortgagees of the firm. In the absence of prior liens, and of stipulations to the contrary, each partner has a lien on the partnership effects for any balance that may be due him, for excess of disbursements by him, and for the liquidation of partnership liabilities. But this lien has its inception in the formation of the partnership. It can not override former liens, created by the individual before he entered into the partnership. Coming in with a lien upon it, that encumbrance remains upon the share of assets the encumbrancer brings into the firm, until it is discharged; and the lien the co-partner acquires in the formation of the partnership, is subordinated to this prior lien, if there was notice, actual or constructive, of its existence. All would admit this to be the rule, if the stock put in and made common by the formation of the

[Griffin v. Appleby.]

partnership, consisted of chattels having an actual existence. The fact that the stock put in has only a potential existence, can not vary this question. It is alike subject to mortgage, and a proper registration of such mortgage gives notice of its existence, having the same legal effect as if the subject of it were property having actual existence at the time of the mortgage. So, if the question were material, I would hold that Mrs. Kelley, forming the partnership with constructive notice that Pendergrast had previously mortgaged the crop to be grown by him, must be understood as agreeing that the prior mortgage shall dominate the lien she would otherwise acquire as a partner.

How does this question affect the parties to this suit? The mortgage to Taylor & Co. was of the crop of cotton which Pendergrast might raise, or cause to be raised. The meaning of this language evidently is, that he conveyed the cotton that should be raised *by* him and *for* him on that land. It can not mean more. He might surrender, forfeit, or sell his lease. He might dispose of a part of it. In the one case he would raise or procure to be raised nothing; in the other, only a partial crop. Suppose he had sublet a separated part of the land to Mrs. Kelley. Could Taylor & Co. claim a lien on the crop then raised by Mrs. Kelley? Can the fact that Pendergrast sublet to her an individual half interest, or a common interest in the lease, instead of a separate interest, make any difference? He could not, and did not dispose of her earnings. It was the crop *he* might raise or procure to be raised, which he mortgaged. He neither raised, nor procured to be raised Mrs. Kelley's share of the crop. Consequently Taylor & Co. acquired no interest in it under Pendergrast's mortgage. They took the mortgage with all these risks, and, in my judgment, have a lien on Pendergrast's half. Mayer & Co. should have the other half, under their mortgage from Kelley and Pendergrast.