[First National Bank of Headland v. Howell, et al.]

# 1st National Bank of Headland v. Howell, *et al.*

*Damages for Destruction of Lien.*

(Decided Feb. 10, 1910. 51 South. 762.)

*Mortgages; Crops; Extent of Lien; Sales.*—A mortgage given by the owner of a plantation on crops grown by her or under her direction during a certain specified year, with the stipulation that if she should abandon or sell the property, before the maturity of the debt, then the mortgagee might take possession of the same, did not operate as a mortgage lien on crops raised by the husband during such year, the husband being the tenant, except as to the reasonable rent which he paid, since a lease is not a sale within the contemplation of the mortgage, but a sale only for a term.

APPEAL from Henry Circuit Court.

Heard before Hon. A. A. EVANS.

Action by First National Bank of Headland against Howell and another as partners, for the destruction of an alleged lien under a mortgage on a certain crop. Judgment for defendant and plaintiff appeals. Affirmed.

ESPY & FARMER, for appellant.—The question in this case is not an open one, but has been decided in accordance with the contention of appellant in the case of *Mayer & Co. v. Taylor & Co.,* 69 Ala. 403; *Shows v. Brantley,* 127 Ala. 352.

B. F. REID, for appellee.—No brief reached the Reporter.

SIMPSON, J.—This action is by the appellant against the appellees, seeking to recover for the destruction of plaintiff's lien by virtue of certain mortgages on two bales of cotton, which it is alleged the defend-

ants received and shipped beyond the limits of the state.

The first mortgage was dated September 8, 1905, and conveys, in addition to other personal property, "our entire crop of every kind and description grown by us or under our direction. on any plantation in Henry county, Alabama, or elsewhere, in the years 1905, 1906, 1907, and 1908," and authorizes the mortgagee to take possession and sell if the mortgagors "should abandon, sell, or dispose of said property before the debt is due." This mortgage is signed by W. F. Thomas and E. L. Farmer, and was recorded. Said E. L. Farmer afterwards married James S. Grissett, and the second mortgage signed by "W. F. Thomas" and "E. L. Grissett," dated December 29, 1906, is stated to be in extension of the previous mortgage debt, and conveys the crops grown "by us, or under our direction, on our plantation in Henry county," or elsewhere, in the years 1906, 1907, and 1908, and was recorded. The third mortgage, also, which was not recorded, is an extension of the previous debt, is dated February 29, 1908, and conveys the crops "grown by us or under our direction on our plantation in Henry county," or elsewhere, during the years 1908, 1909, 1910, and 1911, and provides that, "if we should abandon, sell, or dispose of said property before this debt is due," the mortgagee may take possession, etc.

It is shown by the evidence that said E. L. Farmer (afterwards E. L. Grissett) owned a plantation in Henry county; that on the 17th of February, 1908, she rented said farm to her husband, James S. Grissett, for money rent, taking his note for the rent, $150, which was a fair rental; that said note was deposited in a bank in Headland (the residence of all the parties) for collection, and was paid to said bank by James S. Gris-

sett; that said James S. Grissett cultivated the land in 1908, and E. L. Grissett had nothing to do with the operation of the plantation; and that the cotton in controversy was raised by said James S. Grissett during the year 1908. Said E. L. Grissett testified, also, that she signed the notes and mortgages as security for Thomas, the other signer. The two bales of cotton in question were sold by said James S. Grissett to the defendants, after the rent had been paid, and consisted of a part of the crop raised by him in 1908, over and above the rent. It is not shown who W. F. Thomas is, nor whether he has any land or cultivated any crops during said year. So the question at issue is whether or not the mortgages operated as a lien on the crops raised by a tenant, over and above the rent, which he paid.

This precise question has never been passed upon by this court. In a case wherein P. executed a mortgage on "the crop of cotton which he might raise or procure to be raised during the year," and afterwards took K. as a partner, and they worked the land together (K. having knowledge of the previous mortgage), it was held that K. took, by the partnership in the crops to be grown, subject to the equitable lien already created by the mortgage of P., and that said mortgage was superior to a mortgage made by the partnership as to the entire crop.—*Mayer & Co. v. Taylor & Co.*, 69 Ala. 403, 44 Am. Rep. 522. In another case J. and B. were in possession of land under a deed from M., but had not paid the purchase money. They executed a mortgage to D. on crops to be grown by them on the land that year. On March 13th J. and B., finding that they could not pay for the land, conveyed it back to M., who immediately rented the land to said J. and B. It was held that the mortgage had priority over the rent due

25—165

to M., because M. purchased the land with knowledge that all crops grown on it that year by J. and B. were mortgaged, and "as between them and M. the title to the crops was all along in them, subject to her lien for rent," and, the title having passed out of them and into D. before M. acquired the land from them, there was nothing for her lien to take effect on, except J. and B.'s equity in the crops.—*Mecklin v. Deming,* 111 Ala. 159, 162, 20 South. 507. A mortgage by T., on "my entire crop grown * * * by me or under my direction, on my plantation," was held to cover a bale grown by T. and his sister, "who was a member of his family and subsisted upon the supplies furnished."—*Holst & Co. v. Harmon,* 122 Ala. 453, 460, 26 South. 159, 160. Again, following the *Mecklin Case, supra,* it was held, where the mortgagor sold the land after execution of a mortgage on the crop, the purchaser took the land subject to the first lien of the mortgage, which was superior to his lien for rent.—*Shows v. Brantley,* 127 Ala. 352, 356, 28 South. 716.

But neither of these cases reaches the point involved in this case. In each of them the party who executed the mortgage continued to make the crop on the land in question, although he may have associated another with him, thus brining him within the words of the mortgage; but in the present case the crop was not made by the mortgagors, or under their direction, according to the wording of the mortgage. There is no doubt that E. L. Grissett had a right to sell the land, or to lease it, which is a sale for a term, and, in fact, the mortgages recognize her right to do so, and merely provide that the debt becomes due when she does so. If she had sold the land and left the country, it would not be contended that her mortgage bound the crops which might be raised by the purchaser. So when she leases

it for a year, and she and Thomas abandon it, and make no crop on it, it cannot be said that the words of the mortgage could cover the crops made by the lessee. This is not a proceeding even to subject the rent which belonged to the mortgager, in lieu of what she might have reaped from working the land, and we express no opinion as to whether that may have been subjected; but it seeks to subject the crop made by a purchaser, who received no advances from the party holding the mortgage, and was under no obligation to it.

The cotton in question was not subject to the mortgage.

We have considered this case only on the points made, without alluding to the question as to the validity of a mortgage on growing crops by a married woman, without being joined by her husband. The general charge was properly given for defendant, and the judgment of the court is affirmed.

Affirmed.

McClellan, Mayfield, and Sayre, JJ., concur.