## Hairslip *v.* Brannum.

### Assumpsit.

(Decided December 7, 1916. 73 South. 464.)

1. **Tenants in Common; Contract; Crops.**—A contract between the owner of land and his son, whereby the son agreed to work the crop with him and to receive one-fourth of the crop constituted the father and son tenants in the crop.

2. **Mortgages; Priority; Crops.**—Where the father mortgaged the crop prior to the agreement with the son by which the son acquired a fourth interest in the crop, any rights acquired by the son under the agreement were subordinate to the right of the mortgagee, provided the son had notice of the mortgage at the time of contracting.

3. **Same; Action Against Mortgagee; Instructions.**—Where the question whether the son knew of the mortgage given by his father at the time of contracting was for the jury under the evidence (as in this case) it was error to refuse instructions submitting to the jury the mortgage and plaintiff's knowledge thereof.

4. **Trover and Conversion; Crops; Mortgages.**—Where the father executed a mortgage on the crop which was grown under contract between the father and son under an agreement that the son was to receive one-fourth of the

[Hairslip v. Brannum.]

crop and at the time of making the contract the son did not know of the existence of the mortgage given by the father on the crop, and the mortgagee takes possession of and sells the crop in satisfaction of the mortgage the son can maintain trover against the mortgagee for the conversion of his interest in the crop, notwithstanding he was a tenant in common with his father, provided of course the right of the son is not subordinate to the right of the mortgagee.

APPEAL from Madison Law and Equity Court.

Heard before Hon. J. H. BALLENTINE.

Assumpsit and trover by J. E. Brannum against J. C. Hairslip. Judgment for plaintiff and defendant appeals. Reversed and remanded.

Transferred from Court of Appeals under Acts 1911, page 450.

The facts sufficiently appear. The following special instructions were denied to defendant:

(13) If the jury believe from the evidence that at the time plaintiff made his arrangements with his father, J. S. Brannum, and his brother, Oda Brannum, to work in the crops grown on the Clopton place and on the Whitaker place, he knew that J. C. Hairslip had a mortgage on said crop, then he cannot recover in this case, provided you believe that J. S. Brannum and Oda Brannum were indebted under the mortgage to J. C. Hairslip in a sum equal to the amount of the mortgage.

(15) If plaintiff knew when he made his agreement with his father and brother that Hairslip had a mortgage on the crops cultivated by J. S. and Oda Brannum, or if he knew facts which would have put him on inquiry that would have brought the information to him, he cannot recover under the evidence in this case.

DAVID A. GRAYSON and M. U. GRIFFIN, for appellant. R. E. SMITH, for appellee.

MCCLELLAN, J.—The appellee brought this action against the appellant, and recovered a judgment for $19.66. The complaint contained four counts. The first and second declared, respectively, upon an account due and unpaid and for money had and received by the defendant to plaintiff's use. In legal effect, the third and fourth counts are in trover, for the conversion by defendant of plaintiff's "one-fourth undivided interest in eleven bales of lint cotton and three bales of seed cotton raised by him

[plaintiff], his father, J. S. Brannum, and Otey Brannum, his brother, on the Joe Whitaker place and Mrs. Clopton's place" in Madison county. The defenses, interposed without discrimination to the complaint as a whole, were: First, the general issue with leave to give in evidence any facts which might be good in bar of the action; second, "that at the time said action was commenced the plaintiff was indebted to him [defendant] in the sum of $50 due for fertilizer sold to plaintiff and cotton and cotton seed which were covered by defendant's mortgage which plaintiff converted to his own use." While the latter plea is quite obscure and certainly deficient, it seems to have been intended and to be a plea of recoupment, based upon an indebtedness of the plaintiff to the defendant for fertilizer and upon an unaverred measure of liability to defendant by the plaintiff because of the plaintiff's conversion of cotton and cotton seed which was subject to a mortgage [by whom executed is not averred] to defendant. There was no demurrer questioning the sufficiency of this plea.

From the evidence to summarily indicate only presently important phases of it, these facts appear with fair certainty: That on January 26, 1914, J. S. Brannum and Otey Brannum executed to the defendant a mortgage for $400 on their crops for the year 1914 and succeeding years. The amount secured by this mortgage was taken up through a team and supplied and furnished by defendant. On April 30, 1914, J. S. Brannum executed to defendant a like mortgage for $50. On June 17, 1914, J. S. Brannum executed to defendant an instrument in the nature of a mortgage to secure $85 for fertilizer furnished him by defendant. For the year 1914 J. S. Brannum rented 11 to 13 acres of land of the Clopton place and about 17 acres of the Whitaker place. It is asserted by the plaintiff that during "the last days of February or the first of March," 1914, J. S. Brannum made a trade with the plaintiff, his son, whereby the plaintiff was "to work through and through my [J. S. Brannum's] crop and I [J. S. Brannum] was to work through his [plaintiff's] crop with him, but he [plaintiff] was to have a one-fourth of the crops raised on the Clopton place and on the Whitaker place." It was shown as a part of the agreement between plaintiff and his father that plaintiff (who had himself rented about 4 acres of the Clopton place from Adams' was "to furnish one horse and his labor and pay for his part of the fertilizer;" and the plaintiff

was also "to pay his part of the expenses of paying laborers to hoe the crop."

(1) The agreement thus asserted by the plaintiff constituted the plaintiff and his father, J. S. Brannum, tenants in common in the crop raised under that agreement.—*Haynes Mer. Co. v. Bell,* 163 Ala. 326, 50 South. 311; *Hendricks v. Clemmons,* 147 Ala. 590, 41 South. 306. Whether such an agreement was made in fact, as stated, was, under the evidence, a question requiring the jury's decision.

(2, 3) If the arrangement asserted by plaintiff was made, it was subsequent to J. S. Brannum's execution of the mortgage for $400, and any rights the plaintiff acquired were subsequent and subordinate to the rights of defendant under that mortgage, provided the plaintiff had knowledge or notice thereof at the time he made his agreement with J. S. Brannum.—*Mayer v. Taylor,* 69 Ala. 403, 44 Am. Rep. 522. Whether the plaintiff had such knowledge or notice was, under the evidence, a question for the jury to decide. If the plaintiff had such knowledge or notice of the existence of the mortgage of January 26, 1914, for $400, at the time he made (if so) the arrangement whereby he became a tenant in common in the crops with J. S. Brannum, then the taking of crops by the defendant in virtue of his rights under the mortgage, if it was still unpaid, was justified and involved no wrong to the plaintiff's rights.—*Mayer v. Taylor, supra.* Necessarily the issues, under the contingencies indicated, comprehended inquiries which made the defendant's mortgage of January 26, 1914, a very material factor in the determination of the rights of these parties. The court therefore erred, to the serious prejudice of the defendant, in instructing the jury so as to exclude that mortgage from the jury's consideration.

(5) If the plaintiff was found by the jury to be, in fact, a tenant in common with J. S. Brannum, and, further, that the plaintiff had no notice or knowledge of the existence of the defendant's mortgage of January 26, 1914, when he made the agreement he asserts and entered upon its performance in some substantial way, then the defendant's rights under that mortgage were subordinate to those of the plaintiff under the contract he asserts. If, in such circumstances, the mortgagee assumed possession of the property in question under his mortgage with the view of its sale and the application of the proceeds to the satisfaction of J. S. Brannum's indebtedness secured by the mort-

gage—purposes which he effected in accordance with powers conferred by the mortgage—the plaintiff, though he was a tenant in common with his father in the property, could maintain trover for the conversion of his part of the property by the defendant, J. S. Brannum's mortgagee, provided, of course, the plaintiff's right was not subordinate to those of the defendant, the mortgagee.—*Moore v. Walker,* 124 Ala. 199, 201, 26 South. 984; *Allen v. Harper,* 26 Ala. 686; 38 Cyc. p. 111; *Steiner v. Tranum,* 98 Ala. 315, 320, 321, 13 South. 365.    See, also, 17 Am. & Eng. Ency. of Law, pp. 700-703, with notes.

It results from the foregoing considerations that the court erred in refusing the defendant's requests for special instructions numbered 13 and 15.

Looking to another trial, it seems necessary to make a few suggestions.    If the plaintiff should be found to be entitled to recover, some attention should be paid to the matter of the application of payments to the amounts due on the three mortgages, respectively, in order to properly advise the court and jury as to what was the state of the defendant's mortgage debt at the time he took the property under the power contained in the mortgage or mortgages.    More particular attention should be paid to the dates of registration of these mortgages than appears from the present record to have been the case on this trial.    It would be well to so conform the pleadings as to distinctly deduce the issues by which the rights of the parties must be ascertained and determined.    It may be, upon contingencies readily apparent, that there should be appropriate inquiry into whether defendant was as to the mortgages of April 20, 1914, and of June 17, 1914, an innocent purchaser for value and without notice of the asserted agreement between plaintiff and J. S. Brannum.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.

MAYFIELD, SOMERVILLE, and THOMAS, JJ., concur.