(76 South. 9)

METCALF v. CLEMMONS–POWERS & CO. et al. (4 Div. 696.)

(Supreme Court of Alabama. May 24, 1917.)

1. CHATTEL MORTGAGES ⟐150(1)—RECORD—CONSTRUCTIVE NOTICE.

Whatever rights the mortgagee acquired through a subsequent mortgage on crops were subordinate to the rights of prior mortgagees acquired through a previously executed and recorded mortgage, the registration of which afforded constructive notice to the subsequent mortgagee of its existence.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 246–248, 252.]

2. CHATTEL MORTGAGES ⟐150(1)—DUTY OF PRIOR MORTGAGEES—NOTICE TO SUBSEQUENT MORTGAGEE.

There was no obligation on the prior mortgagees of a crop to notify a subsequent mort-

gagee of the existence of their claim, notice of which was imputed to the subsequent mortgagee by the operation of the registration laws.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 246–248, 252.]

3. DISCOVERY ⬥19—PLEADING AND PROOF.

Where the object sought by a bill in equity is discovery and relief, though only the inhibition of further prosecution of an action at law, complainant must aver and prove not only the materiality of the matter of ·which he would have discovery, but also that it is indispensable to establishment of his cause or defense, and that he is unable otherwise to make his proof.

[Ed. Note.—For other cases, see Discovery, Cent. Dig. §§ 20–26.]

4. DISCOVERY ⬥19—PLEADING—INTERROGATORIES—STATUTE.

A bill seeking discovery, and relief consequent thereupon, or discovery only, disclosing on its face that complainant's adversary had answered interrogatories propounded in a pending action at law under the statutory system for the examination of one party by another prescribed by Code 1907, § 4049 et seq., in disclosure of the relevant material matters sought to be discovered through answer to the bill, is subject to demurrer.

[Ed. Note.—For other cases, see Discovery, Cent. Dig. §§ 20–26.]

5. DISCOVERY ⬥3—EQUITY OF BILL—REMEDY AT LAW BY INTERROGATORIES — STATUTES.

Where complainant, who filed bill for discovery and relief, could have secured all the desired evidence of facts, as well as books, etc., through the use, in actions at law pending against him, of the statutory system for the examination of one party by another through interrogatories, prescribed by Code 1907, § 4049 et seq., the bill did not have equity.

[Ed. Note.—For other cases, see Discovery, Cent. Dig. §§ 3, 4.]

6. CHATTEL MORTGAGES ⬥17—INTEREST OF MORTGAGOR.

The mortgagor of land to a loan company, who, when he executed a subsequent crop mortgage, and when he brought the crop into existence and gathered it, was in possession of the land, had such an interest that he could mortgage the crops to grow or that were grown thereon.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 55–58.]

7. CHATTEL MORTGAGES ⬥129—SECURITY OR CONVEYANCE.

In a court of equity, a mortgage is a security, and not a conveyance, in the sense that title is thereby divested.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 216.]

Appeal from Chancery Court, Geneva County; O. S. Lewis, Chancellor.

Suit by P. M. Metcalf against Clemmons-Powers & Co. and others. From a decree denying · relief, complainant appeals. Affirmed.

W. O. Mulky, of Geneva, for appellant. C. D. Carmichael, of Geneva, and W. R. Chapman, of Dothan, for appellees.

McCLELLAN, J. On March 4, 1907, J. W. Clemmons executed to appellees a mortgage to secure an indebtedness of $750 on his crops to be grown in Geneva county in the year 1908. This mortgage was recorded on March 23, 1907. On November 27, 1907, J. W. Clemmons executed another mortgage to appellant for $2,000, covering the crops to be grown by him in Geneva county for the year 1908. From the crop (1908) so grown by this mortgagor the appellant bought from the mortgagor 16 bales of cotton, and applied the proceeds to Clemmons' indebtedness to appellant. The appellees brought their action for damages against the appellant for the thus wrought destruction of the lien, resulting from their mortgage of date March 4, 1907. This court reversed the judgment rendered in favor of defendant in that action; the conclusion being that the plaintiffs were due the general affirmative charge. Clemmons v. Metcalf, 171 Ala. 101, 54 South. 208.

[1] Whatever rights the appellant acquired through his subsequent mortgage from J. W. Clemmons were necessarily subordinate to the rights of appellees acquired by them through the previously executed and recorded mortgage by J. W. Clemmons; the registration thereof affording constructive notice to appellant of its existence at the time he took the mortgage of date November 27, 1907. Hairslip v. Brannum, 73 South. 464;[1] Mayer v. Taylor, 69 Ala. 403, 44 Am. Rep. 522; Clemmons. v. Metcalf, 171 Ala. 101, 103, 104, 54 South. 208. After reversal of the judgment in the law court this bill was filed by Metcalf; and, in accordance with its prayer, the further prosecution of the action at law was enjoined. The chancellor denied all relief under the bill. In one of its features reformation of the mortgage to appellees, of date March 4, 1907, is sought on the ground that the inclusion therein of the crops to be grown by J. W. Clemmons during the year 1908 was not contemplated or intended by the parties thereto. It is very clear from the evidence that this feature of the bill was not sustained in the proof. Indeed, the contrary · is the only conclusion reasonably possible from the evidence.

[2] Another feature of the bill is predicated of an asserted estoppel against appellees to maintain any claim or right under their previously executed mortgage because they, with knowledge that appellant had taken his subsequent mortgage from J. W. Clemmons and was furnishing supplies to J. W. Clemmons to make his 1908 crop, did not warn or advise appellant that they had and relied on an antecedently executed and recorded mortgage on J. W. Clemmons' crop for the year 1908, and intended to look to it as a means of satisfying J. W. Clemmons' indebtedness, thereby secured, to the appellees. On the appeal from the judgment at law (171 Ala. 101, 54 South. 208) the court held that no waiver or estoppel was shown. The registration of the appellees' mortgage bore constructive notice to appellant of· the existence of a right superior to any appellant might acquire through a subsequent

---

[1] 198 Ala. 214.

mortgage by Clemmons to appellant. There was no obligation on appellees to notify the appellant of the fact notice of which the operation of the registration laws imputed to him. It is not proven that the appellees waived, surrendered, in any way, their right under the mortgage or that they misled appellant to his prejudice in the premises. Clemmons v. Metcalf, 171 Ala. 101, 104, 105, 54 South. 208. His predicament must be attributed, under the effect of the evidence, to his own want of care for his own interest, as in the ordinary case where a second mortgagee parts with value on its faith when the registration of a superior mortgage operated to impute to him constructive notice of the existence thereof.

[3] Neither of the two features of the bill, to which reference has been made, were sustained. Hence error in the decree cannot be found on. that account. The chief reliance for a right to equitable relief is involved in an appeal to the powers of a court of equity to give discovery, indispensable to the protection or assertion of complainants' rights in the premises and upon a jurisdiction thus invoked to proceed to a complete adjudication and adjustment of the issues and rights of the parties. Sims, Ch. Prac. (Ala.) § 668. In cases where the object sought by the bill is discovery and relief—even though the only relief desired is the inhibition of a further prosecution of an action at law—the complainant's obligation is to aver, and to sustain the allegation, not only the materiality of the matter of which he would have discovery, but also that it is indispensable to the establishment of his cause or defense, and that he is unable otherwise to make his proof. Shackelford v. Bankhead, 72 Ala. 476; Wolfe v. Underwood, 96 Ala. 329, 332, 11 South. 344, and other decisions noted under section 668 of Mr. Sims' work. The matter of the discovery desired is the state of the account—the true amount of the indebtedness between J. W. Clemmons and the appellees, secured by their mortgage of date March 4, 1907, on the crop for the year 1908; the complainant's contention being that the value or amount of that indebtedness would, in any event, fix the limit of appellant's liability for the destruction of the lien of the appellees on the 16 bales of cotton bought by him in the fall of 1908. It is true this court has held that the enactment of the statutory provisions for propounding interrogatories by one party to another (Code, § 4049 et seq.) in civil actions and equitable causes did not abrogate the jurisdiction of the courts of equity to enforce discovery (Handley v. Heflin, 84 Ala. 600, 4 South. 725; Shackelford v. Bankhead, 72 Ala. 476). See Pomeroy's Eq. (3d Ed.) §§ 193–195. This court is committed to this view of the merely cumulative effect of our statutory system for the examination of one party by another through interrogatories propounded in ac-

cordance with the requirements of the system. Code, § 4049 et seq. The requisites to the construction of an efficient bill of discovery and relief include, as stated, the averment that the complainant cannot prove the facts of which he would have discovery otherwise than through the defendant's answer. While this element is necessary to be averred in order to properly invoke the jurisdiction of a court of equity in such circumstances, the judicial duty still pervades to determine, in the concrete cause presented, whether the averment of the complainant's entire inability to establish the fact, of which discovery is sought, otherwise than through the defendant's answer, has been, in fact, proven. It is manifest that the averment is not proven, cannot be established when the full privilege is available to the complainant (defendant in the pending action at law) to file interrogatories to his adversary under the statutory system (Code, § 4049 et seq.), and thereby draw from his adversary a written response containing every relevant fact or circumstance that could possibly be ascertained and made available by the defendant's answer to a bill of discovery. The authority of the court of law to enforce answers to interrogatories propounded under the statutory system is adequate, designedly effective. Code, § 4055, which provides:

"If answers to the interrogatories are not filed within thirty days after service of a copy of the interrogatories, or when the answers are not full, or are evasive, the court may either attach the party and cause him to answer fully in open court, or tax him with so much costs as may be just, and continue the cause until full answers are made, or direct a nonsuit or judgment by default or decree pro confesso to be entered, or render such judgment or decree as would be appropriate if such defaulting party offered no evidence."

[4] Certainly, it could not be affirmed that bill of discovery was the only available means to afford proof of a fact in a pending action at law, through a defendant's answer, in the face of a complete means to the same end furnished and made readily available by positive statute. Indeed, a bill seeking discovery and relief consequent thereupon, or discovery only, that disclosed on its face that a complainant's adversary had answered interrogatories propounded in a pending action at law under the statutory system (Code, § 4049 et seq.) in disclosure of the relevant, material matters sought to be discovered through answer to the bill, would, beyond doubt, be subject to demurrer, for that such a bill would itself bear the affirmative assertion of its own want of necessity. The motive for the creation of, and the foundation of the conception underlying, the jurisdiction in equity to compel discovery was the fact that no remedy at law existed to afford this necessary relief. 1 Pom. Eq. § 195. So when, as with us, adequate statutory method, available in the courts of law, is provided and exists, the fundamental reason for further recourse

to this jurisdiction of equity, in pending actions at law, has been abrogated.

[5] Our conclusion, therefore, is that the appellant's cause could not be restrained upon the theory that discovery was his due, since all evidence of facts as well as books, etc., that could have been made available through the answer of the defendants to the bill (plaintiffs in the pending action at law) could have been secured and were and are made as readily available through the use, by the complainant, of the statutory system, to the same end in pending actions at law. Hence no error affects the decree in consequence of any erroneous conclusion with respect to the feature of the bill that depends upon discovery for its lead to equity jurisdiction or to relief in that forum. Since the merit, the equity, of the bill in this aspect rests entirely upon discovery and seeks relief only consequent upon a jurisdiction thereby alone invoked, it is clear that recourse to principles applicable where the bill asserts some other ground of equitable cognizance cannot be had; the right in equity to the discovery is not justified.

The complainant amended his bill by adding paragraphs 12 and 13. The allegations therein made evince this theory: That since, previous to the execution, on March 4, 1907, of the mortgage to appellees, J. W. Clemmons had executed to a loan company a mortgage on the land on which the 16 bales of cotton in question were grown during the crop year 1908, and since the mortgage executed by J. W. Clemmons to appellant, on November 27, 1907, was made to cover the same land that was incumbered by the mortgage to the loan company, J. W. Clemmons had no such title or interest in the land on which this crop was raised, and hence no such title to or interest in the crop, as would or could invest the appellees with any right under their mortgage of date March 4, 1907; the assertion of this theory involving the complainant in the necessity, it seems, to allege that the two mortgages of the land—one prior and the other subsequent to the mortgage to appellees—operated together to divest J. W. Clemmons' legal title and his equity of redemption, and the avowal following therefrom that J. W. Clemmons' mortgage to appellees was vain because J. W. Clemmons had no interest in the land or crops he could mortgage. The special chancellor held that the amendment was without merit in equity, and sustained the demurrer.

[6, 7] J. W. Clemmons, both when he executed the crop mortgage on March 4, 1907, to appellees and when he brought the crop into existence and gathered it, in the year 1908, was in possession of the land. The loan company had not even foreclosed. Having the character and quality of interest in and title to the land J. W. Clemmons had at these periods, he held such an interest as that he could mortgage the crops to grow or that were grown thereon. 1 Jones on Mort. § 136; Heard v. Heard, 181 Ala. 230, 61 South. 343; Field v. Karter, 121 Ala. 329, 25 South. 800. Furthermore, in a court of equity a mortgage is a security, not a conveyance in the sense that title is thereby divested. The circumstances under which this court held in Thompson v. Union Warehouse Co., 110 Ala. 499, 18 South. 105, that the subsequent crop mortgagee was without right to crops maturing after default by the mortgagor in his obligation given to the prior mortgagee of the land, were not present in the allegations made in the amendment to the bill. There the mortgagor had surrendered the possession of the premises to the mortgagee; and default had intervened to perfect, in a court of law, the absolute title of the land mortgagee to the land on which the crops were then growing. That decision is without effect or influence on the question decided by the special chancellor.

There is no error underlying the decree. It is affirmed.

Affirmed. All the Justices concur.